UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHATEARA E.,[1]

                                 Plaintiff,        Case # 21-CV-00360-FPG

v.                                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                Defendant.
_____

## INTRODUCTION

On June 11, 2019, Shateara E., ("Plaintiff") protectively applied for disability benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 19. The Social Security Administration (the "SSA") denied her claim and Plaintiff appeared at a hearing before Administrative Law Judge Bryce Baird (the "ALJ") on August 13, 2020. *Id*. At the hearing, Plaintiff appeared and testified, along with her attorney and a vocational expert. *Id*. On August 26, 2020, the ALJ issued an unfavorable decision. Tr. 21. On January 13, 2021, the Appeals Council denied review. Tr. 1. Plaintiff appealed directly to this Court on March 8, 2021. ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 9. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the judgment of the SSA is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de*

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

*novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

## II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

**DISCUSSION**

I.   **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 11, 2018, the alleged onset date. Tr. 21. At step two, the ALJ found that Plaintiff has the following severe impairments: "obesity, asthma, depression, and bilateral knee patellar mal-tracking." Tr. 22; *see also* 20 CFR 404.1520(c) and 416.920(c). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 22.

Next, the ALJ determined that Plaintiff maintained the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), with specific exertional limitations, Tr. 25, namely that claimant "can lift and carry 50 pounds occasionally, and 25 pounds frequently, sit for 6 hours in an 8 hour day, and stand or walk 6 hours in an 8 hour day[;] can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds[;] can occasionally balance, stoop, crouch, and kneel but never crawl[;] must avoid exposure to pulmonary irritants such as odors, chemicals, fumes, dusts, gases and poor ventilation[;] can perform simple, routine tasks that can be learned in a short demonstration or within 30 days[;] can perform work that does not require her to independently develop work strategies or identify workplace needs[;] can have occasional interaction with co-workers and the public[;] can perform work that requires doing the same tasks every day with little variation in location, hours or tasks[; and] can perform work that is subject to no more than occasional supervision." Tr. 25.

At steps four and five, the ALJ concluded that there were jobs that existed in the national economy that Plaintiff could perform, such as "hand packager," "linen room attendant," and

"dining room attendant." Tr. 32. As such, the ALJ found that Plaintiff was not disabled from her alleged onset date, June 11, 2018, through the date of the ALJ's decision, August 26, 2020. *Id*.

**II.     Analysis**

Plaintiff argues that the ALJ (i) erred during his RFC determination because he did not expressly account for portions of the opinion of psychological consultative examiner Dr. Gregory Fabiano, Ph.D., that related to Plaintiff's mental impairments, despite finding the opinion persuasive, and (ii) improperly considered Plaintiff's non-compliance with treatment when evaluating the credibility of Plaintiff's subjective complaints. ECF No. 7-1 at 14, 20. The Commissioner contends that the ALJ (i) properly considered Dr. Fabiano's opinion as well as Plaintiff's mental impairments during the RFC determination and crafted an RFC consistent with the record evidence as a whole, and (ii) reasonably considered Plaintiff's non-compliance and subjective complaints before properly determining the alleged severity of Plaintiff's claims was not consistent with the overall record. *See* ECF No. 9-1 at 7, 14. For the reasons below, the Court agrees with the Commissioner.

### A.  Medical Opinion of Dr. Fabiano

As discussed, Plaintiff argues that the ALJ did not account for a portion of Dr. Fabiano's opinion—that Plaintiff had "moderate limitations in basic mental demands, such as regulating emotions and controlling behavior"—when crafting Plaintiff's RFC, despite finding the opinion persuasive. ECF No. 7-1 at 17. Such a failure left the ALJ's RFC determination unsupported by substantial evidence, according to Plaintiff. *Id*. The Court disagrees.

A claimant's RFC reflects what she "can still do despite [her] limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To make the RFC determination, "[i]t is well

established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted). An RFC is based on a "weighing of the treatment records" and a "careful analysis of the opinion evidence." *Jennifer B. v. Comm'r of Soc. Sec.*, No. 19-CV-799-FPG, 2021 WL 485698, at *3 (W.D.N.Y. Feb. 10, 2021). Crucially, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Moreover, courts routinely recognize that when analyzing the record as a whole, the ALJ need not rely on one particular opinion. *See, e.g., Monroe v. Comm'r of Soc. Sec*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (stating that the ALJ properly discounted a medical source opinion based on, among other things, the inconsistency of the physician's opinion with his treatment notes, and properly relied on treatment notes and activities of daily living to formulate the RFC); *Tankisi v. Comm'r Soc. Sec*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (stating that where "the record contains sufficient evidence from which an ALJ can assess … residual functional capacity," a medical source statement or formal medical opinion is not necessarily required). The ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta*, 508 F. App'x at 56.

Here, even if the ALJ did not explicitly account for Plaintiff's alleged moderate limitations in basic mental demands—such as regulating emotions and controlling behavior, as articulated by Dr. Fabiano—during his RFC determination, the Court finds that the ALJ properly weighed all of the evidence available, including Dr. Fabiano's opinion, to "make an RFC finding that [was] consistent with the record as a whole." *Id*. As discussed, an ALJ's conclusion need not

"correspond perfectly with any specific medical opinion." *Id*. During his RFC determination, the ALJ assessed Plaintiff's mental limitations in detail and, in pertinent part, evaluated Dr. Fabiano's opinion that Plaintiff was "capable of unskilled simple work with additional moderate level limitations in *interacting with others*, *regulating emotions*, and maintaining well-being but can perform reason, judgment, sustain concentration, and regular routines and attendance[.]" Tr. 30 (emphasis added). The ALJ noted that Dr. Fabiano examined Plaintiff only once, but found his opinion to be "persuasive." *Id*. According to the ALJ, Dr. Fabiano's conclusion, which included the above-referenced moderate limitations in regulating emotions and controlling behavior. that Plaintiff's "psychiatric issues were not significant enough to interfere with her ability to function on a daily basis" was "generally consistent with the treatment records of claimant's mental health." *Id*. The ALJ ultimately determined that while Plaintiff's "depression would interfere with her daily functioning, [Dr. Fabiano's] opinion is generally consistent with the totality of the evidence." *Id*.

In addition to Dr. Fabiano's opinion, the ALJ considered and evaluated the medical opinions of state agency psychiatric consultants L. Dekeon Ph.D. and V. Ng, M.D. The state agency consultants opined that Plaintiff had no more than "moderate limitations in understanding, remembering and applying information, interacting with others, concentrating, persisting and maintain pace and adapting and managing oneself with the ability to understand." Tr. 30. The state agency consultants likewise opined that Plaintiff had "no more than moderate level limitations in mental functioning." *Id*. The ALJ found such opinions "generally persuasive" when crafting Plaintiff's RFC. *Id*.

Based on the above record before the ALJ during his RFC determination, the Court finds that the ALJ possessed ample medical evidence from which he could assess Plaintiff's mental limitations and properly determined that Plaintiff could perform a range of unskilled work in

accordance with the available medical opinions. The ALJ weighed all of the evidence available to make an RFC finding that was "consistent with the record as a whole." *Malta*, 508 F. App'x at 56 (internal quotations and citations omitted). While Plaintiff correctly states that an ALJ must, as a general matter, explain why aspects of a medical source opinion, such as Dr. Fabiano's, were not explicitly adopted in full if the RFC assessment conflicts with that opinion, the ALJ's decision in the present action did not conflict with Dr. Fabiano's opinion, nor any other opinion of record. *See Gonzalez v. Colvin*, 2016 WL 5793425, *8 (W.D.N.Y. 2016. Here, the ALJ evaluated three separate medical opinions, each of which opined directly as to Plaintiff's alleged mental limitations, as discussed above, and crafted an RFC consistent with each "persuasive" opinion. Tr. 30. Even if the ALJ did not expressly or specifically discuss Dr. Fabiano's opinion that Plaintiff had moderate limitations in regulating emotions or controlling herself, the Court recognizes that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta*, 508 F. App'x at 56. Where an ALJ's Step Four analysis, as here, "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous," remand is not necessary. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see Ryder v. Comm'r of Soc. Sec.*, No. 18-CV-539-FPG, 2020 WL 5433459, at *5 (W.D.N.Y. Sept. 10, 2020).

Plaintiff's argument also lacks merit because, as a general matter, "moderate limitations in social interaction and other areas of work-related functioning nonetheless permit the performance of unskilled work, such that a limitation to unskilled work is generally sufficient to accommodate those limitations." *Wightman v. Comm'r of Soc. Sec.*, 18-CV-6295, 2019 WL 2610712, at *2

(W.D.N.Y. June 26, 2019) (no error for the ALJ to permit Plaintiff's frequent contact with supervisors, coworkers and the public when Plaintiff had moderate limitation in social interaction).

### B. Plaintiff's Subjective Complaints

Next, Plaintiff contends that the ALJ improperly considered Plaintiff's non-compliance with treatment in evaluating the credibility of Plaintiff's subjective complaints. ECF No. 7-1 at 14, 20. For the reasons below, the Court disagrees.

When determining a claimant's RFC, the ALJ is required to take the claimant's testimony as to limitations into account, "but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). Here, the ALJ reasonably concluded that Plaintiff's testimony as to the severity of her alleged mental limitations was not supported by other medical evidence of record and properly considered Plaintiff's non-compliance with treatment when determining the credibility of her subjective complaints.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Id*. (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id*. (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the claimant's allegations considering several factors, including treatment received to relieve symptoms. 20 C.F.R. §§ 416.1529(c)(3)(v), 416.929(c)(3)(v). "However, the [ALJ] must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996). Moreover, the ALJ should consider whether the claimant's cognitive deficits or lack of insight into his or her own limitations contributed to the failure to continue recommended treatment. *See Kennerson v. Astrue*, No. 10-CV-6591 MAT, 2012 WL 3204055, at *13 (W.D.N.Y. Aug. 3, 2012).

Here, the ALJ discounted Plaintiff's credibility in part because she was frequently noncompliant with recommended treatment. Tr. 27. With respect to her physical impairments, Plaintiff testified that she was unable to work in part because she experiences "symptoms of chronic pain, fatigue, headaches, limitations of mobility, [and] sleep disruption." Tr. 26. With respect to her mental impairments, Plaintiff testified that she experiences "symptoms of variable moods, irritability, crying spells, panic paranoia, self-esteem issues, loss of interest in activities once enjoyed, decreased energy, […] difficulty with memory […] difficulty with activities of daily living and increased reliance upon her family for support." *Id*. In discounting Plaintiff's statements concerning the intensity and persistence of these symptoms, the ALJ noted certain "evidence of non-compliance in the record." Tr. 27.

For example, the record showed Plaintiff "had been sanction[ed] for 6 months due to non-compliance with [a work plan] through Department of Social Services[,]" had "missed taking her

9

shot[s][,]" had attendance issues at Summit Family Practice with "warnings noting that any further missed appointments would risk termination of treatment[,]" and was "cautioned that she had not followed up since her last appointment [for treatment] in 2019." Tr. 27.  In addition, the ALJ noted that "despite her alleged asthma, [Plaintiff] continues to use tobacco and cannabis[,]" and had "difficulty scheduling appointments due to 'scheduling conflicts.'" Tr. 27.  The ALJ then considered whether Plaintiff "could not obtain low cost or no-cost medical care as necessary if financial hardship was a barrier to treatment[,]" before concluding that the record did not contain such evidence. *Id*.  The ALJ similarly considered Plaintiff's purported reasons for this pattern of non-compliance, such as "scheduling conflicts," before concluding that the record suggested rather that Plaintiff's non-compliance may instead be an "indication that the symptoms [were] not as severe as purported." *Id*.

As mentioned above, the ALJ was entitled to consider treatment Plaintiff received (or did not receive) to relieve her symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).  In doing so, it is clear that the ALJ considered whether additional factors interfered with Plaintiff's ability to comply with recommended treatment, before permissibly concluding that they likely did not. *See Linzy v. Berryhill*, No. 16-CV-6121-FPG, 2017 WL 2265684, at *8 (W.D.N.Y. May 24, 2017) (finding no error in ALJ's consideration of non-compliance in evaluating severity of subjective complaints where ALJ considers explanations provided by claimant).  Accordingly, for these reasons, the Court finds that the ALJ did not err in finding that Plaintiff's treatment history weakened her credibility.  This aspect of Plaintiff's motion is rejected.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 7, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 9, is GRANTED,

and the judgment of the SSA is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

    IT IS SO ORDERED.

Dated: August 30, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court
Western District of New York